UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**KEVIN CHMIELEWSKI**

12 Grants Avenue
Ocean View, DE 19970

    Plaintiff,                                             No. 20-3025
    v.

**ANDREW WHEELER,** Administrator of the Environmental Protection Agency**,**
**DAN BROUILLETTE**, Secretary of Energy,
**ENVIRONMENTAL PROTECTION AGENCY**, and **DEPARTMENT OF ENERGY**,
Agencies of the United States

U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

And

U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, DC 20585

    Defendants
_____

**COMPLAINT FOR EQUITABLE RELIEF**

Plaintiff Kevin Chmielewski, by and through his attorneys, brings this action against the Environmental Protection Agency, the Department of Energy and the highest government officials of each, and pleads as follows:

**I. NATURE OF THE ACTION**

1. Plaintiff alleges that the U.S. Environmental Protection Agency ("EPA"), the Department of Energy ("DOE") violated his free speech and due process rights by, respectively, removing him and refusing to hire him. The EPA fired him from

*Complaint for Equitable Relief*           1

his 5 U.S.C. § 3132(a)(7) non-career Senior Executive Service ("SES") position on February 12, 2018.  The DOE refused to hire him into a GS-15 non-career political appointee position. These actions were taken for retaliatory purposes and without due process of law. From May 2017 until February 12, 2018, Plaintiff served as Deputy Chief of Staff for Operations at the EPA under Administrator Scott Pruitt (hereafter "Administrator") performing predominantly administrative and ministerial functions.  On February 12, 2018 the EPA locked Plaintiff out of his office, and escorted him out of the building. The EPA did not provide him any notice or opportunity to be heard, nor a statement of causes or reasons. Instead, in a letter dated April 12, 2018, and mailed on April 16, 2019, the EPA represented to Plaintiff for the first time that he was considered to have resigned on March 17, 2018 despite Plaintiff having never resigned.  Plaintiff alleges that he was removed for retaliatory reasons and without due process of law because he engaged in a series of allegations to appropriate officials, human resources staff, agency counsel, and Congressional committees that the Administrator was engaged in a pattern and practice of incurring travel expenses, office improvements, and use of staff for personal tasks in violation of federal statutes, regulations and EPA policies. Plaintiff had been unable to find work in his field since his unlawful termination, until the DOE on March 31, 2020 informed him that he would be hired.   On April 8, 2020, the White House Presidential Personnel Office informed Plaintiff that there would be no place for him in the Trump Administration due to his protected activity.

## II.  JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's cause of action arises under the Constitution and laws of the United States

and raise federal questions under the free speech clause of the First Amendment and the due process clause of the Fifth Amendment.

3. Plaintiff has exhausted his administrative remedies with the Office of Special Counsel (OSC) and the Merit Systems Protection Board (MSPB). On January 16, 2020, the OSC found it lacked jurisdiction over a non-career SES employee like Plaintiff. On April 20, 2020, the MSPB made the same determination. The OSC and MSPB correctly concluded that Plaintiff has no right to any remedy as a non-career SES employee under the Civil Service Reform Act (CSRA), 5 U.S.C. §7701 et seq, or the Whistleblower Protections Enhancement Act, 5 U.S. Code § 2302 et seq. On October 16, 2020, the OSC made the same determination as to the DOE's retaliatory refusal to hire him.

4. Sovereign immunity for non-monetary relief has been waived by 5 U.S.C. § 702 of the Administrative Procedures Act.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) and (e).

### III.  PARTIES AND KEY ACTORS

6. Plaintiff is a citizen of the United States and now resides in the State of Delaware. During all times material to this action, Plaintiff worked in the EPA's Washington, DC office.

7. Defendant Environmental Protection Agency (EPA) and Department of Energy are agencies of the United States under 5 U.S.C. § 104, and within the meaning of 5 U.S.C. § 701. Administrator Andrew Wheeler is EPA's highest official, and Secretary Dan Brouillette is the DOE's highest official. The principal offices of each are in the District of Columbia.

8. In addition to the Administrator, EPA officials who were actors in the events set forth herein are as follows:

 (a) Ryan Jackson, Chief of Staff to EPA Administrator

 (b) Charles Munoz, White House Liaison for EPA

 (c) Millan Hupp, Secretary of Scheduling for Administrator

 (d) Pasquale "Nino" Perrotta, Chief of Security for Administrator

 (e) Samantha Dravis, Associate Administrator for EPA Office of Policy

 (f) Justina Fugh, Esq. EPA Senior Counsel for Ethics

 (g) Helena Wooden-Aguilar, Esq., EPA Deputy Associate Administrator for the Office of Policy.

9. In addition to the Secretary, DOE officials who were actors in the events set forth herein are as follows:

 (a) Jonathan Wetzel, White House Liaison to Department of Energy

 (b) Coleman Tolbert, Special Assistant at the Office of the White House Liaison to the U.S. Department of Energy

 (c) Sophia Varnasidis, Chief of Staff of the Deputy Secretary of the Department of Energy

## IV. BACKGROUND FACTS

10. Plaintiff is a U.S. Coast Guard veteran who served sixteen years as a Merchant Marine with a Captain's license. From 2002, he was regularly employed by various political organizations and campaigns.

11. Plaintiff was employed at the Department of Homeland Security at the time he accepted a position at the EPA as a GS-14 Director of Scheduling on April 25, 2017.

12. On July 2, 2017, Plaintiff accepted a position as the Administrator's Deputy Chief of Staff for Operations, a non-career Senior Executive Service ("SES") employee.

13. On February 12, 2018, the EPA informed Plaintiff that if he did not resign, he would be fired, and was on that date ordered to return his office access authorizations and to leave the worksite.

14. Plaintiff remained unemployed despite persistent job search efforts.

15. On Friday, March 13, 2020 John McEntee II (Director of the White House Presidential Personnel Office and former Body Man to the President) and Jared Smith (Deputy Director of the White House Presidential Personnel Office) called Plaintiff expressing empathy for what happened to him and that they wanted to get him back into the Administration. They said they had two jobs in mind that were GS-15 level positions at the Department of Treasury and the Department of Energy. John McEntee recommended the Department of Energy job as Trip Director for the Secretary or Deputy Secretary of Department of Energy.

16. On March 16, 2020, Jared Smith followed up with Plaintiff via text and phone call and advised him to call Andrew Kloster in the White House Presidential Personnel Office. On March 18, Emily Higgins (Deputy Associate Director of the White House Presidential Personnel Office) emailed Plaintiff requesting an updated copy of his resume. On March 19, 2020, Ms. Higgins sent Plaintiff an SKC-SES Bio Sheet and an Updated Research Questionnaire for Loyalty to President Trump. This correspondence was also sent to the White House Liaison to Department of Energy Jonathan Wetzel.

*Complaint for Equitable Relief*        5

17. On March 20, 2020, Coleman Tolbert (Special Assistant at the Office of the White House Liaison to the U.S. Department of Energy) contacted Plaintiff to schedule an interview with Mr. Wetzel on Monday March 23, 2020 at 1:00 P.M. On March 23, 2020 Plaintiff had a WebEx interview with Mr. Wetzel. During the interview, Mr. Wetzel advised Plaintiff that he was a shoe-in for the job and that, for protocol reasons, he would have to do one more interview with the Chief of Staff of the Deputy Secretary of the Department of Energy, Sophia Varnasidis, as the final process. Immediately following the interview, Mr. Wetzel sent Plaintiff more paperwork to begin the hiring process.

18. On March 31, 2020, Mr. Wetzel informed Plaintiff that his interview with Ms. Varnasidis was scheduled to take place on Thursday, April 2, 2020 via WebEx. During the interview with Ms. Varnasidis, she advised Plaintiff that he was highly qualified for the job and that they would like to have him be part of the team. She then told him to stand by and wait for her office and the Presidential Personnel Office to contact him within the next 24 hours.

## V.  FACTS OF PROTECTED ACTIVITY

### A. Plaintiff's First Amendment Speech Disclosures—Overview:

19. In addition to disclosing the Administrator's violation of travel policies and laws to the Administrator himself and to his Chief of Staff Ryan Jackson and his White House Liaison for EPA Charles Munoz, Plaintiff made those disclosures to appropriate White House budgetary and administrative officials.

20. Many of Plaintiff's disclosures were subsequently confirmed in whole or in part by the EPA Office of Inspector General ("OIG").  The OIG identified $985,037 in travel costs associated with former Administrator official travel for the

10-month period from March 1, 2017, to December 31, 2017. This amount covered 40 planned trips—34 completed and six canceled—and included costs incurred by the former Administrator, the Protective Security Detail and other staff. Plaintiff incorporates by reference those OIG findings published in "Actions Needed to Strengthen Controls over the EPA Administrator's and Associated Staff's Travel", Report No. 19-P-0155 (May16, 2019).  Of the 34 completed trips, 16 included travel to, or had stops in, Tulsa, Oklahoma—the location of the former Administrator's personal residence. The amount also covered costs for military and charter flights taken by the former Administrator.

    **B. <u>Disclosures of Travel Related Violations of Statutes, Regulations and EPA Rules:</u>**

21. The Administrator instructed his senior staff that any flight he took must be on Delta Airlines for which he had premium status and privately owned accumulated award miles. This was a *per se* violation of EPA rules for competitive pricing.  He flew first and business class 99 times out of 112 from May to December 2017, i.e., 86 first class, 13 business, and 12 coach flights.  This distribution of passenger classes violated EPA polices and rules.

22.  The Administrator flew back and forth to Oklahoma many weekends, often at the EPA's expense, in violation of the rules and policies.  In the spring and summer of 2017, he spent 43 days over a 3-month time-period traveling to Oklahoma. To circumvent the rules and avoid paying for trips home himself, the Administrator had his staff create a meeting in Oklahoma during his stay to justify his planned personal travel . The Federal Travel Regulations (FTR) require government employees to take the direct or usually traveled route, absent special

approved circumstances. If an indirect route is used for personal convenience, government reimbursement is limited up to the cost of travel by a direct route. The Administrator violated this rule by taking trips with stops in Tulsa, Oklahoma. He also needlessly increased expenses by creating additional travel time for his protective detail agents.

23. The Administrator spent more than $120,000 of public funds during a June 2017 trip to Italy that an EPA lobbyist organized under the guise of a meeting with environmental ministers from G-7 countries. This trip included a $30,500 security detail, and nearly $90,000 spent on food, hotels, commercial airfare, and an $11,000 military jet used by the Administrator and nine of his staffers. The EPA paid this $11,000 for a military aircraft to fly the Administrator and his staff from Cincinnati to New York for said trip to Italy despite the availability of commercial flights that were faster and cheaper.

24. When Plaintiff objected that travel logistics or expenditures were not allowed, the Administrator responded with words to the effect, "I don't care, I'm a Cabinet Secretary, make it happen."

25. The Administrator also provided approval for Samantha Dravis to fly first-class on his return trip from Morocco, even though there was no legal justification for her to do. Plaintiff refused to sign paperwork after the trip because it was a violation of the FTR.

25. The Administrator failed to comply with federal regulations requiring government travelers to obtain approval or authorization from their agency to use accommodations, other than coach-class transportation, when traveling on official

business. The Administrator had himself issued a "blanket waiver" to the federal regulation limiting officials' ability to fly first-class. The Administrator would stay in among the most expensive hotels in violation of the travel policies and regulations. His travel often exceeded the prescribed 150% per diem rate without appropriate justification and approval.

      **C.** **Disclosures of Non-Travel Related Violations of Statutes, Regulations and EPA Rules:**

26. The Administrator used five email addresses, three EPA official email addresses and two private email addresses to conduct official EPA business. He violated policies and laws prohibiting the conducting of official business over non-official email accounts thus avoiding FOIA requests.

27. The Administrator used Millan Hupp as a personal real estate representative, having her spend weeks improperly using federal government resources and time to contact rental and seller's agents, and touring numerous properties in which the Administrator might wish to reside.

28. The Administrator used government funds to pay $3,000 for civilians to conduct a bug sweep of the EPA, a federal building. It is a violation of law for a civilian to conduct a sweep of a federal building.

29. The Administrator installed a $43,000 secure communications facility ("phone booth") next to his office, despite the already existing secure communications facility on another floor of the EPA building.

30. In violation of 5 CFR § 410.502 the Administrator paid security detail overtime, using their services on Saturdays and Sundays so they could acquire expensive face cream for him, to be purchased at the Ritz- Carlton in Baltimore,

Maryland. The Administrator also used this security detail to pick up his dry cleaning and run other errands.

31. The Administrator rented a condominium from the head of Williams & Jensen lobbying firm which had business before the EPA. One of the firm's clients in 2017 was Cheniere Energy Inc., which owned an active liquefied natural gas ("LNG") export plan at the time, a matter of regulatory concern to the EPA.

32. Plaintiff was present in meetings with Ryan Jackson and Millan Hupp from about May 2017 to February 2018 when they verbalized that they were removing from the "secret calendar" meetings the Administrator had with coal, mining, oil industry, fertilizer businessmen/lobbyists (mostly from Oklahoma) and changed calendar entries to "staff meeting" for the public calendar record. EPA staff were directed to falsify the Administrator's official schedules after the meetings took place so the public and the EPA would not know of meetings with lobbyists.

33. Plaintiff met with staff of the House Oversight and Government Reform Committee on approximately April 12, 2018 to provide detailed information about his disclosures.

### D. Plaintiff's Post-Termination Protected Activity:

34. Following his termination, Plaintiff engaged in protected disclosure to the news media explaining many of the foregoing disclosures and alleged that Administrator Pruitt had lied to Congress regarding them.

35. These media disclosures included but were not limited to the following:

(a) NBC News, April 12, 2020, Fired Whistleblower Details Corruption at EPA;

(b) ABC News, April 30, 2018, "EPA Whistleblower Says Pruitt 'Lied' to Congress";

(c) New York Times, May 2, 2018, Ex-Lobbyist for Foreign Governments Helped Plan Pruitt Trip to Australia;

(d) CNN, July 3, 2018, "Whistleblower: EPA's Pruitt Kept Secret Calendar to Hide Meetings; and

(e) The Hill, July 8, 2018, "Ex-aide Says He'll Take Credit for Pruitt's Downfall".

## VI. FACTS OF ADVERSE ACTIONS

### A. Adverse Actions by EPA:

36. The Administrator's security chief Mr. Perrotta initiated a retaliatory EPA OIG investigation against Plaintiff falsely accusing him of not having a security clearance and covering up a past arrest. The OIG found the accusation unsubstantiated.

37. On February 9, 2018 an EPA security agent stated to Plaintiff words to the effect: "Hey Kev, I'm going to need your parking pass."

38. On February 12, 2018 EPA's White House liaison Munoz stated to Plaintiff words to the effect: "Pruitt wants you to resign effective immediately". Munoz asked Plaintiff to sign a resignation form. Plaintiff refused to sign it. Munoz told Plaintiff that if he were fired, he would lose his clearance and never get another job in the federal government.

39. On February 12, 2018 Plaintiff was stripped of his access authorization and removed from the building. However, Plaintiff initially continued to get paid while having no assignments. At no time was Plaintiff informed he had been removed, fired or otherwise involuntarily terminated.

40. Within two weeks, Helena Wooden-Aguilar and Justina Fugh told Plaintiff that the EPA General Counsel's office warned the Administrator's Chief of Staff Ryan Jackson not to make statements to the effect that Plaintiff was removed because he went to Congress, Human Resources or other officials. They informed Plaintiff they did not have any paperwork showing his removal.

41. On April 20, 2018, Plaintiff received personnel documents falsely representing that he had resigned on March 17, 2018. Munoz had signed said documents "*for Kevin Chmielewski*" and dated the resignation as March 17, 2018. Munoz also signed the "Employee Mobile Device Acknowledgement Form" as "*For Kevin C.*" on March 17, 2018. Jackson signed follow-up documents to the same effect "*for Scott Pruitt*" on April 5, 2018.

42. Plaintiff was informed after the fact that his insurance was canceled, a violation of his notice rights under the Affordable Care Act.

**B. Adverse Actions by DOE:**

43. On April 8, 2020 John McEntee and Jared Smith called Plaintiff from the White House and informed him that every time they tried to pass his paperwork through, it was stopped by numerous people because of what happened at the EPA with Scott Pruitt due to Plaintiff's disclosures.

44. Plaintiff then texted Mr. Smith and asked if he or Mr. McEntee could speak when they were away from the White House and could talk freely. Mr. Smith sent Plaintiff a texted response that "the Admin[istration] isn't a possibility but I'll try and help you and will call you this weekend."

45. Plaintiff received no more communications from the DOE and was not hired into the position he was told he would receive.

## VII.  CAUSE OF ACTION

**VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER THE FIRST AND FIFTH AMENDMENTS**

46. All of the foregoing paragraphs are incorporated and reasserted as if fully set forth herein in support of Plaintiff's cause of action.

47. Plaintiff reasonably believed that the foregoing information he disclosed regarding improprieties concerning the expenditure of public funds on travel, use of public servants to perform non-governmental functions, falsification of calendars and documents, and use of personal email accounts to conduct government business violated one or more of the following statues, rules, regulations and policies applicable to the EPA:

(a) Under 5 U.S.C. § 5733, official travel on the part of federal employees must be "by the most expeditious means of transportation practicable" and "commensurate with the nature and purpose of the [employee's] duties," not personal use.

(b) The Federal Travel Regulation (FTR), issued by the U.S. General Services Administration (GSA), is codified in 41 CFR Chapters 300 through 304. The FTR implements statutory requirements and executive branch policies for travel by federal civilian employees and others authorized to travel at the government's expense. The GSA promulgates the FTR to: (a) interpret statutory and other policy requirements in a manner that balances the need to assure that official travel is conducted in a responsible manner with the need to minimize administrative costs,

and (b) communicate the resulting policies in a clear manner to federal agencies and employees.

(c) The EPA's travel policy—Resource Management Directive System (RMDS) 2550B, *Official Travel*, applies to EPA and other federal employees who travel using agency funds. The policy also addresses travel that nonfederal sources pay for (i.e. "fund ") for EPA employees. The policy states that the FTR is the first source of reference for all federal travel. RMDS 2550B, Section IV, *Responsibilities* requires justification and approval to use an indirect air route to prevent travel abuse by public employees making non-business excursions during government travel.

(d) Under 5 U.S.C. § 7353, use of military aircraft is strictly regulated to prevent government officials from using them when commercial air travel alternatives are reasonably available.

(e) Under FTR §301-11.30(a), a government traveler may be reimbursed for actual lodging expenses not to exceed 300 percent of per diem. EPA policy requires approval and justification in advance of trips if the expenses exceed 150% of per diem.

(f) Section 710 of the Financial Services and General Government Appropriations Act, 2017 (section 710) prohibits an agency from obligating an amount in excess of $5,000 to furnish, redecorate, purchase furniture for, or make improvements for the office of a presidential appointee during the period of appointment without prior notification to the appropriations committees of Congress. The statutory language of section 710 requires notification not only for the purchase of furniture and for aesthetic changes, but also for supplying the office with other

equipment. The Government Accountability Office found in its April 16, 2018 report that: "The U.S. Environmental Protection Agency (EPA) violated section 710 when it failed to notify the appropriations committees prior to obligating in excess of $5,000 for the installation of a soundproof privacy booth for the office of the Administrator during the period of his appointment. Because EPA used its appropriations in a manner specifically prohibited by law, EPA violated the Antideficiency Act and should report a violation as required by 31 U.S.C. § 1351."

(g)  Intentional deletion of meetings is a violation of the Federal Records Act, 44 U.S.C. § 3106, requiring agencies to maintain and preserve public documents. It is also a violation of 18 U.S.C. § 2071, which prohibits intentional distortion of federal records.

48.  Plaintiff reasonably believed in the truth of all of his allegations above which he repeated to Congress, the EPA Office of Inspector General, the U.S. Office of Special Counsel, the Merit System Protection Board, and the news media.

## VIII.  COUNT ONE:  VIOLATION OF FIRST AMENDMENT FREE SPEECH RIGHTS

49.  All of the foregoing paragraphs are incorporated and reasserted as if fully set forth herein.

50.  In February 2018, Corey Lewandowski told Plaintiff that the Administrator knew about his disclosures.

51.  When Plaintiff refused to violate laws and federal rules and made disclosures to officials outside of the EPA, the Administrator reassigned Plaintiff's SES Deputy Chief of Staff responsibilities to Ms. Hupp, a GS-11 employee.

52. In January 2018, when Plaintiff returned from agency travel to Israel, Jackson and Munoz informed him that the Administrator intended to fire or relocate him to avoid any further face-to-face contact with Plaintiff.  Jackson and Munoz told Plaintiff to cease his oversight of the Administrator and that they would try to find him a placement elsewhere.

53. Oversight of the Administrator's compliance with expense, budgetary, personnel use, record keeping, and email policies, rules and regulations was not a duty assigned to Plaintiff, and was not a part of his job description.

54. Plaintiff's disclosures of the Administrator's non-compliance with expense, budgetary, personnel use, record keeping, and email policies, rules and regulations neither impeded Plaintiff's proper performance of his duties, nor interfered with the regular operations of the Administrator's office or the performance of the Administrator's duties.

55. Plaintiff did not agree explicitly or implicitly to waive, surrender or refrain from exercising his First Amendment rights by reason of accepting employment at the EPA. In accepting his positions, he intended to fully retain his rights to speak as a citizen addressing matters of public concern.

56. All of Plaintiff's disclosures set forth above addressed matters of public concern.

57. The Administrator and his senior staff including Ryan Jackson, Chief of Staff to EPA Administrator, Charles Munoz, White House Liaison for EPA, and Pasquale Perrotta, Chief of Security for the Administrator, and the White House Office of Management and Budget had knowledge of Plaintiff's disclosures.

58. The Administrator removed or otherwise involuntarily terminated the Plaintiff's employment because of his disclosures.

59. The Administrator, the EPA and the United States had no legitimate governmental interest in removing or otherwise involuntarily terminating Plaintiff from his employment.

60. Plaintiff was qualified for the DOE position for which he was interviewed and told to shortly expect an appointment thereto.

61. On information and belief, DOE officials were aware of Plaintiff's protected activity, including through extensive media coverage of the same.

62. Plaintiff was not hired into the DOE position in retaliation for his protected activity in violation of his speech rights under the First Amendment.

### IX.  COUNT TWO: VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT

63. All of the foregoing paragraphs are incorporated and reasserted as if fully set forth herein.

64. Plaintiff was employed at the Department of Homeland Security at the time he accepted a position at the EPA as a career level GS-14 Director of Scheduling on April 25, 2017. He had a constitutionally protected expectation of continued employment and property interest in that civil service position.

65. The Office of Personnel Management regulations confer upon SES non-career appointees a right to notice prior to removal. 5 CFR § 359.902 "Conditions of Removal" render the agency's right to remove an appointee contingent upon notice prior to the date of removal. This regulation established Plaintiff's expectation of pre-removal notice.

66. Instead of providing Plaintiff with the required prior notice, the Administrator, Munoz and Jackson affirmatively concealed the removal from Plaintiff by creating false documentation of a resignation he had not submitted.

67. The Defendants terminated the Plaintiff's healthcare benefits without notice or opportunity to exercise his rights to continue coverage under the Consolidated Omnibus Budget Reconciliation Act (COBRA). Plaintiff had a statutorily created property interest in his health insurance and in its continuation ever after removal. COBRA requires a plan administrator after a qualifying event to notify "any qualified beneficiary" of his right to continue health insurance coverage for up to eighteen months. 29 U.S.C. § 1166(a)(4) prescribes a notice requirement; 29 U.S.C. § 1162 provides a right to continuation coverage. An employer must notify a benefit plan administrator of a qualifying event triggering COBRA coverage within 30 days of its occurrence. 29 U.S.C. § 1166(a)(2). In turn, the plan administrator must inform the covered employee of his rights under COBRA. 29 U.S.C. § 1166(a)(4). In terminating his health insurance without said required notice and opportunity to exercise his vested COBRA rights, the Defendants violated Plaintiff's right to due process of law under the Fifth Amendment.

## X.  REQUEST FOR RELIEF

Plaintiff requests that this Court:

(A) Reinstate Plaintiff to his employment as Deputy Chief of Staff of the EPA, retroactive to March 12, 2018, or to a comparable position in the SES and/or as a GS-14;

(B). Alternatively, instate Plaintiff to the GS-15 non-career position he was told to expect at the DOE;

(C) Order expunged from Plaintiff's personnel file all records related to his purported resignation;

(D) Enjoin Defendants from further retaliation against the Plaintiff;

(E) Award Plaintiff his costs and reasonable attorneys' fees incurred in this action under the Equal Access to Justice Act, 28 USCS § 2412; and

(F) Award all other relief provided by the laws of the United States and equity.

Respectfully Submitted,

\_\_\_/s/ John A. Kolar_____
John A. Kolar, Lead Attorney (D.C. Bar No. 292953) jkolar@whistleblower.org
Thomas M. Devine (D.C. Bar No. 357202)
Samantha P. Feinstein (D.C Bar No. 1655505)
Government Accountability Project
1612 K. Street NW, Suite 1100
Washington, D.C. 20006
Telephone: (202) 457-0034

Attorneys for Plaintiff (*Mr. Kolar is authorized to receive service*)